# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 8008 | DATE | 11/27/2000 |
| CASE TITLE | MJ & Partners etc. et al. Vs. David Zadikoff et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. MJLP's motions to dismiss the counterclaims filed by Zadikoff and Cornerstone are denied. Status hearing set for December 14, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 28 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CM | 138 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 NOV 27 PM 3: 13 | | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MJ & PARTNERS RESTAURANT LIMITED )
PARTNERSHIP and 23 FOOD, INC., )
                                                                 Plaintiffs, )
                                vs. )          No. 97 C 8008

DAVID ZADIKOFF, JUMP, INC. and )
MICHAEL JORDAN, )
                                Defendants. )

MICHAEL JORDAN and JUMP, INC., )
                              Plaintiff-Intervenors, )
                                vs. )

23 FOOD, INC., MJ & PARTNERS )
RESTAURANT LIMITED PARTNERSHIP, 23 )
RESTAURANT, INC., as general partner of )
MJ & PARTNERS RESTAURANT LIMITED )
PARTNERSHIP, and 23 RETAIL, INC., )
                                Defendants. )

DOCKETED NOV 28 2000

## MEMORANDUM AND ORDER

This is the most recent issue in the ongoing litigation saga involving Michael Jordan, his celebrity status and his restaurant ventures. In this order, we address the counterclaims brought by David Zadikoff (Zadikoff) and Cornerstone Management & Consulting, Inc. (Cornerstone) against MJ & Partners Restaurant Limited Partnership and H. Gene Silverberg (collectively "MJLP"), alleging defamation and tortious interference with prospective business relations. MJLP has moved to dismiss the counterclaims and, for the reasons set forth below,

138

the motions are denied.

## BACKGROUND

The story has been told at length elsewhere, *see, e.g.*, MJ & Partners Restaurant Ltd. Partnership v. Zadikoff, 10 F.Supp.2d 922 (N.D. Ill. 1998), and therefore we will only summarize the facts that are relevant to MJLP's motion. On September 4, 1992, MJLP engaged RMI Limited Partnership ("RMI") to operate Michael Jordan's Restaurant (the Restaurant). On January 1, 1993, Hyatt Corporation (Hyatt), on behalf of RMI, in turn contracted with Cornerstone to provide consulting and administrative services for the Restaurant. Zadikoff executed the contract on behalf of Cornerstone as the company's chairman. The initial term of the consulting agreement was 18 months. On December 13, 1995, Hyatt and Cornerstone entered into an amended contract which extended the term of the consulting agreement to May 31, 1998.

By all accounts, the parties' business venture and personal relationships initially flourished. Both the venture and the relationships, however, eventually fell apart. On November 17, 1997, MJLP initiated the underlying lawsuit which, *inter alia*, accused Zadikoff of trademark infringement, breach of fiduciary duty, and various other torts arising from his effort to open a different restaurant in Chicago while continuing to manage Michael Jordan's Restaurant. The next day, November 18, 1997, MJLP sent a letter to Nick Pritzker, a principal of Hyatt, asking Pritzker to terminate his relationship with Zadikoff. The letter summarized MJLP's claims against Zadikoff at some length, and included the following passages:

> Through investigation we have recently discovered that Mr. Zadikoff ... is utilizing Michael Jordan's name and persona, etc. in connection with the proposed restaurant. The operation of that restaurant would be in complete violation of our license agreements with Michael Jordan and brings into

> question Mr. Zadikoff's loyalty to [Michael Jordan's Restaurant], its capital investors, RMI, frankly, all of us, in the future.
>
> Mr. Zadikoff has taken a number of other actions which seriously impair his ability to remain with [Michael Jordan's Restaurant]. For example, he has been utilizing confidential information related to the partnership (e.g., limited partners lists and the investments they made) for non-partnership purposes and soliciting limited partners in the Restaurant to invest with him in his restaurant and in other related ventures. We believe, based on information received from at least two limited partners, that he has utilized financial information from the Restaurant in connection with a plan to take public a chain of Michael Jordan restaurants and nightclubs and is leveraging off the success of this Restaurant without regard for the rights of the license or the investment of his fellow Limited Partners, let alone Hyatt or the Restaurant's general partners.
>
> * * * * *
>
> Mr. Zadikoff has cast a long ugly shadow on the reputation of Hyatt, the Restaurant and the trust of our Limited Partners.

(Zadikoff's Am. Ans. Exh. A). The November 18, 1997 letter was signed by Gene Silverberg and sent not only to Pritzker but also to Michael Jordan and his agents, David Falk and Curtis Polk.

On December 10, 1997, MJLP sent a substantively similar letter to investors in the Restaurant explaining MJLP's accusations against Zadikoff. The letter included the following statements:

> Mr. Zadikoff has taken a number of other actions which seriously impair his ability to remain with the Restaurant. These activities include:
> • using confidential information related to the partnership for non-partnership purposes ...
> • utilizing financial information from the Restaurant and leveraging off the success of this Restaurant without regard for our rights as clearly defined in the license
> • utilizing the Restaurant's employees and has on several occasions, used our facilities in the development of these plans.

(Zadikoff's Am. Ans. Exh. B). Signed by Gene Silverberg, the December 10, 1997 letter was

distributed to approximately 85 individuals. The letter also stated that the "information provided to you is <u>confidential</u> and should <u>not</u> be disseminated by you to anyone."

These two letters form the bases of Zadikoff's and Cornerstone's counterclaims against MJLP. Zadikoff alleges that the November 18 and December 10 letters, and in particular the above-quoted passages contained therein, constitute actionable defamation. Accordingly, he has leveled two counterclaims against MJLP, one based on each letter. Cornerstone advances a single counterclaim, asserting that MJLP tortiously interfered with Cornerstone's prospective business relations with Hyatt by distributing the false and defamatory letters. As evidence of injury, both Zadikoff and Cornerstone point out that Hyatt refused to renew Cornerstone's contract to provide consulting and administrative services for Michael Jordan's Restaurant and, instead, terminated its business relationship with Cornerstone and Zadikoff on May 31, 1998.

## DISCUSSION

MJLP disputes all charges and seeks to dismiss the counterclaims under Rules 12(b)(1) and 12(b)(6). *See* Fed.R.Civ.P. 12(b)(1), (b)(6). On a motion to dismiss we take as true all facts alleged in the complaint and construe all reasonable inferences in the non-movant's favor. *See* <u>Dawson v. General Motors Corp.</u>, 977 F.2d 369, 372 (7th Cir.1992). Although they base their allegations on the same two letters, Zadikoff and Cornerstone advance different legal theories in their respective counterclaims. We will therefore discuss their claims separately.

I. <u>Defamation</u>

In his counterclaims, Zadikoff asserts that the November 18 and December 10 letters constitute defamation *per se*. He claims that the statements contained in the two letters were

false, that MJLP knew of their falsity, and that MJLP nevertheless distributed the letters as part of an intentional effort to injure Zadikoff. MJLP raises three arguments in response: (1) the counterclaims lack subject matter jurisdiction; (2) the counterclaims are untimely; and (3) the letters are privileged and therefore do not amount to actionable defamation. MJLP argues that each of these flaws is an independent ground for dismissal of Zadikoff's counterclaims.

MJLP first argues that the counterclaims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). MJLP correctly points out that since defamation is a creature of state law and there exists no diversity between the parties here, our subject matter jurisdiction over the counterclaims must derive from some indirect source. Both sides rely on Fed.R.Civ.P 13. They expend space in their briefs debating whether Zadikoff's defamation counterclaims qualify as compulsory under Rule 13(a) or permissive under Rule 13(b), with the idea being that ancillary jurisdiction exists over compulsory counterclaims but an independent jurisdictional basis is required for permissive ones. These arguments are outdated. Since Congress enacted 28 U.S.C. § 1367 in December 1990, the distinction between compulsory and permissive counterclaims no longer bears on the jurisdictional question. *See* <u>Rothman v. Emory University</u>, 123 F.3d 446, 454 (7th Cir. 1997); <u>Channell v. Citicorp National Services, Inc.</u>, 89 F.3d 379, 384-85 (7th Cir. 1996). Now, the appropriate inquiry is whether the counterclaims are related to the underlying claims such that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). All that is needed is a "loose factual connection between" the counterclaims and the primary claims. <u>Baer v. First Options of Chicago, Inc.</u>, 72 F.3d 1294, 1299 (7th Cir. 1995) (*quoting*

Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995)).[1]

The nexus between MJLP's primary claims and Zadikoff's defamation counterclaims is sufficient to warrant exercising jurisdiction over the latter in this case. The claims and counterclaims involve the same individuals and companies and the same basic subject matter. MJLP described the nature of its allegations against Zadikoff in the November 18 and December 10 letters, and Zadikoff relies on those two letters, and the substance contained therein, in support of his defamation counterclaims against MJLP. The factual allegations are intertwined to some extent and, at the very least, there is a loose connection between the parties' countervailing accusations. Furthermore, this litigation has been proceeding before us for over three years now -- many pieces have been resolved on the merits and some have even had the benefit of adjudication after trial. Factors familiar to the 28 U.S.C. § 1367 analysis, including concerns of judicial economy, convenience, fairness and comity, militate in favor of retaining supplemental jurisdiction over Zadikoff's counterclaims. *See* Rothman, 123 F.3d at 454. The defamation counterclaims withstand MJLP's jurisdictional challenge.

MJLP next attempts to defeat Zadikoff's counterclaims on timeliness grounds. A few words about the procedural history of the case are necessary at this point. MJLP filed its complaint on November 17, 1997. On December 23, 1997, Zadikoff moved to dismiss. In an order issued May 6, 1998, we granted Zadikoff's motion in part and denied it in part. Zadikoff

---

[1] At first blush, the shift from Rule 13 to 28 U.S.C. § 1367 may appear to be merely a housekeeping measure, separating rules of procedure from rules of jurisdiction. There are, however, substantive shades of difference between the two provisions. Most importantly, the "same case or controversy" standard of 28 U.S.C. § 1367 is akin, but by no means identical, to the same "transaction or occurrence" standard of Rule 13. Indeed, after reviewing the statute's text and history, the Seventh Circuit concluded in Baer that 28 U.S.C. § 1367 allows courts to exercise jurisdiction over state law counterclaims in broader circumstances than did Rule 13. Baer, 72 F.3d at 1298-1301.

subsequently answered the surviving allegations of MJLP's complaint on August 11, 1998. This original answer did not include any counterclaims. On February 8, 1999, Zadikoff requested permission to amend his answer to include the defamation counterclaims. We granted Zadikoff's request on March 9, 1999, and received his amended answer and counterclaims on that date but reserved MJLP's right to raise arguments in opposition (an invitation which MJLP has taken up in the present motion).

Fixed within this timeline are the two letters, dated November 18, 1997 and December 10, 1997. Illinois law provides a one-year statute of limitations for defamation, 735 ILCS 5/13-201, so Zadikoff had until November 18, 1998 and December 10, 1998, respectively, to sue MJLP based on the letters. Zadikoff did not seek to pursue his defamation theory until February 8, 1999, however, and did not in fact file his counterclaims until March 9, 1999, a few months after the limitations period had expired. Thus, if we simply placed a timeline of events next to the one-year filing period contained in section 5/13-201, we would conclude that Zadikoff's defamation counterclaims are untimely.

Another statute is in play, however, that saves Zadikoff's otherwise stale allegations. Under 735 ILCS 5/13-207

> A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise.

Translated into plain English, section 5/13-207 provides that "a defendant in a lawsuit may bring a counterclaim after the period authorized in the applicable statute of limitations has elapsed, so long as the plaintiff's claim arose before the cause of action brought as a counterclaim was barred." Bethlehem Steel Corp. v. Chicago Eastern Corp., 863 F.2d 508, 511

(7th Cir. 1988). Although this provision was meant to stymie the calculating plaintiff who seeks to delay filing his complaint so that, while his complaint comes within the applicable limitations period, any counterclaims the defendant seeks to file in response would be time-barred, Dignan v. Midas-International Corp., 382 N.E.2d 559, 562 (Ill. App. 1 Dist. 1978), Illinois courts have applied the clause broadly and in situations the drafters likely did not foresee. *See* Cameron General Corp. v. Hafnia Holdings, Inc., 683 N.E.2d 1231, 1238-40 (Ill. App. 1 Dist. 1997) (holding that section 5/13-207 operates when the counterclaims are unrelated to the primary claims, when the primary claims have been dismissed, and even when the plaintiff has recast his time-barred primary claims as counter-counterclaims).

Based on its express language and historical construction, we find that section 5/13-207 is applicable to the case at hand. Although MJLP did not engage in the sort of devious behavior lawmakers may have had in mind when enacting section 5/13-207, Zadikoff's counterclaim falls squarely within the ambit of the statute. Applying fact to law, we note that MJLP's claims against Zadikoff arose by at least November 17, 1997 (the date it filed the complaint), while Zadikoff's counterclaims did not expire until November 18 and December 10, 1998 (one year after the letters were written). Thus, since MJLP's claims arose before Zadikoff's counterclaims were time-barred, the defamation counterclaims are timely.

Finally, MJLP argues that there is no actionable defamation here because the November 18 and December 10 letters are protected by a qualified privilege. In order to determine whether a defamatory statement is conditionally privileged under Illinois law, a court is to examine the occasion for the communication and determine "as a matter of law and general policy whether the occasion created some recognized duty or interest to make the

communication so as to make it privileged." Kuwik v. Starmark Star Marketing and Admin., Inc., 619 N.E.2d 129, 134 (Ill. 1993). Illinois courts generally recognize three classes of conditionally privileged occasions: (1) situations involving some interest of the person who publishes the defamatory matter; (2) situations involving some interest of the person to whom the defamatory matter is published or of a third person; and (3) situations concerning a recognized interest of the public. Id. at 135. Relying on the second category, MJLP claims that the November 18 and December 10 letters were of significant interest to their recipients (Pritzker and investors), for they set out MJLP's allegations against Zadikoff and described why MJLP believed that Zadikoff could no longer manage the Restaurant.

Even if MJLP is correct on this point, however, Zadikoff can overcome the conditionally privileged nature of the letters by showing that the qualified privilege has been abused. An abuse occurs when the defamer acts with a direct intention to injure the defamed party or a reckless disregard of the defamed party's rights and of the consequences that may result. Kuwik, 619 N.E.2d at 135. Elaborating on this standard, the Illinois Supreme Court has held that "an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." Id. at 136. Whereas the existence of a qualified privilege is a question of law, the issue whether the privilege was abused is a question of fact for the jury. Id. at 133.

Zadikoff's counterclaim sufficiently alleges that MJLP abused the qualified privilege with respect to the November 18 and December 10 letters. Zadikoff alleges that MJLP "either knew the statements were false, acted with reckless disregard, or had no reasonable basis for

believing them to be true" (Zadikoff Counterclaim at ¶¶ 11, 18). Furthermore, Zadikoff claims that MJLP "made the statements in the [letters] with disregard for Zadikoff's rights and with the intent to injure Zadikoff without just cause or excuse" (Zadikoff Counterclaim at ¶¶ 12, 19). Allegations such as these are sufficient to plead abuse of privilege. *See* <u>Horwitz v. Board of Education of Avoca School Dist. No. 37</u>, 1999 WL 558131, at *8 (N.D. Ill. Jul. 21, 1999); <u>Bogosian v. Board of Education of Community Unit School Dist. 200</u>, 73 F.Supp.2d 949, 953 (N.D. Ill. 1999). Therefore, just as we rejected MJLP's theories on jurisdiction and timeliness, we find that MJLP's arguments regarding privilege are insufficient to warrant dismissal of Zadikoff's defamation counterclaims.

## II. Tortious Interference with Prospective Business Relations

Cornerstone's sole counterclaim accuses MJLP of tortiously interfering with Cornerstone's prospective business relations with Hyatt. Specifically, Cornerstone alleges that Pritzker orally promised Zadikoff that Hyatt would continue to extend the term of its consulting agreement with Cornerstone for as long as RMI was engaged by MJLP to operate the Restaurant. Cornerstone claims that MJLP's November 18, 1997 letter to Pritzker interfered with this prospective business relationship by causing Hyatt to not renew the Cornerstone consulting agreement when it expired on May 31, 1998. MJLP seeks dismissal of this counterclaim on three grounds.

We have visited two of MJLP's arguments before and have little more to say about them. MJLP first contends that Cornerstone's counterclaim lacks subject matter jurisdiction because it has too little in common with MJLP's primary claims. This argument is just as unpersuasive here as it was when raised against Zadikoff. MJLP's primary claims are based on Zadikoff's

alleged misconduct vis-a-vis the Restaurant. Cornerstone's counterclaim is based on MJLP's effort to inform Pritzker about Zadikoff's alleged misconduct. The claims involve the same parties and the same basic set of facts. Cornerstone's counterclaim is more than "loosely connected" to MJLP's primary claims and it passes the test of 28 U.S.C. § 1367. *See* Baer, 72 F.3d at 1299. Second, MJLP argues that the November 18 letter is protected by a qualified privilege and therefore cannot serve as grounds for Cornerstone's tortious interference claim. Even if we assume that the November 18 letter is conditionally privileged, however, Cornerstone has pled enough to raise an abuse of privilege issue.[2] We will not dismiss the counterclaim on grounds of privilege.

In its third argument, MJLP turns to attack the substance of Cornerstone's counterclaim, asserting that Cornerstone could not have had a reasonable expectation that Hyatt would renew the consulting contract. Cornerstone founded its expectations primarily on representations made by Pritzker to Zadikoff. Cornerstone alleges that prior to the execution of the consulting agreement in 1993, Pritzker told Zadikoff and Jonathan Albert (another Cornerstone officer) that "Cornerstone would have the consulting agreement with Hyatt as long as RMI had the Restaurant Management Agreement with MJLP." Similarly, in November 1996, Pritzker again advised Zadikoff "that Hyatt would extend the consulting agreement for the remaining term of the Restaurant Management Agreement between RMI and MJLP" (Cornerstone Counterclaims at ¶¶ 8-9). According to Cornerstone, when it added these representations to its prior working relationship and course of dealing with Hyatt, and

---

[2]Cornerstone, like Zadikoff, alleges that MJLP wrote the November 18 letter "with the intent of purposely interfering with Cornerstone's business relationship with Hyatt" and that MJLP "acted with malice ... [and] with knowledge of [the letter's] falsity, and/or in reckless disregard of whether the statements were false or not" (Cornerstone Counterclaim at ¶¶ 14-15).

especially Hyatt's previous renewal of the consulting agreement, Cornerstone logically and reasonably concluded that the consulting agreement would be renewed when it expired.

MJLP argues that, despite Pritzker's alleged representations and the prior history of dealings, Cornerstone could not have expected the consulting agreement to continue indefinitely because the contract itself provided otherwise. MJLP points out that the contract between Hyatt and Cornerstone included an express termination date. The original consulting agreement stated that the contract term was for 18 months. When they amended the contract in 1995, the parties again inserted a specific termination date, stating that the agreement expired on May 31, 1998 (MJLP Br. Exh. A). MJLP also calls attention to an integration clause contained in the contract,[3] indicating that the parties intended that their relationship be governed solely by the terms of the contract and not by any external oral representations. Given that the contract contained a specific termination date and a controlling integration clause, MJLP argues that Pritzker's purported promises to Zadikoff contradict the terms of the consulting agreement and therefore cannot support a reasonable expectation of renewal on the part of Cornerstone.

MJLP's arguments are forceful, but misplaced. Cornerstone does not allege that the oral representations and course of dealings transformed its consulting agreement with Hyatt into a contract of perpetual temporal scope. Rather, Cornerstone asserts that the representations and course of dealings gave rise to a independent expectation that the consulting contract would be renewed. That is why the counterclaim alleges tortious

---

[3] The contract states: "This Agreement contains the entire agreement between the parties hereto; no representations, inducements, promises or agreements, oral or other, between the parties not embodied herein shall be of any force or effect" (MJLP Br. Exh. A).

interference with prospective business relations and not tortious interference with an existing contractual relation. The integration clause does not play a decisive role. Nor are the specific termination dates very relevant. The question is not whether there was a modified or permanent contract, but whether there was a reasonable expectation that the contract would be renewed after it expired by its own, unmodified terms.

In order to establish the existence of a reasonable expectancy on its part, Cornerstone must show that it had more than "the mere hope" of continuing its arrangement with Hyatt. Williams v. Weaver, 495 N.E.2d 1147, 1152 (Ill. App. 1 Dist. 1986); see Fellhauer v. City of Geneva, 568 N.E.2d 870, 878 (Ill. 1991) (describing elements of the tort under Illinois law). Cornerstone's allegations detail two specific assurances regarding future business with Hyatt, both emanating from the highest corporate levels. The allegations also find support in the historical pattern of Cornerstone's business relationship with Hyatt. At this stage of the proceedings we find that Cornerstone's counterclaim sufficiently states a cause of action for tortious interference with prospective business relations. *See* Quadro Enterprises, Inc. v. Avery Dennison Corp., 1999 WL 759488, at *5-7 (N.D. Ill. Sep. 8, 1999) (holding that allegations of reasonable expectancy were sufficient under federal notice pleading standards). Of course, "the landscape may change dramatically on summary judgment, where the court may address fact-based issues, such as whether [Hyatt] really was willing to do business with [Cornerstone] into the future." *Id.* at *7. Persuasive evidence against Cornerstone may emerge from the shadows as the counterclaim ripens. The lack of corroborating evidence would also speak volumes. But, for now, Cornerstone's counterclaim survives.

## CONCLUSION

For the reasons set forth above, MJLP's motions to dismiss the counterclaims filed by Zadikoff and Cornerstone are denied.

*JAMES B. MORAN*
JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 27, 1999.